IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DENVER BENNETT,

    Plaintiff,

v.                                                         No. 07-2305

ERMCO COMPONENTS, INC.,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff, Denver Bennett, brought this wrongful termination suit against his former employer, ERMCO Components, Inc. ("ERMCO"), alleging that ERMCO fired him in retaliation for exercising his right to workers' compensation benefits. (Docket Entry ("D.E.") No. 1, Compl. ¶¶ 5-11.) The Court has jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332(a). Pending before the Court is the Defendant's Rule 56, Federal Rules of Civil Procedure motion for summary judgment. (D.E. No. 10.) The Defendant has responded and thus, this motion is appropriate for disposition. For the following reasons, the Court DENIES the motion.

BACKGROUND

The following facts are undisputed unless noted. The Plaintiff applied for employment as a welder with ERMCO on March 27, 2006. (D.E. No. 10 Ex. A, Def.'s Statement of Facts ¶ 1.) The timing of the application followed Bennett's recent release from the Tennessee state prison system. (Id. ¶ 2.) He listed "T.D.O.C" as his last or present employer on the application and stated that he had been employed there as a lead welder, with an "Ending Pay" of $18.75. (Id. ¶¶ 3, 7, 9.) The letters "T.D.O.C" represented an abbreviation for the Tennessee Department of Corrections. (Id.

¶ 4.) The Plaintiff claimed that he used this acronym because he did not know how to spell "Tennessee," although the Defendant noted that Bennett had graduated from high school. (Id. ¶¶ 5-6.)

It was later revealed that the Plaintiff's self-reported "Ending Pay" represented his *weekly* remuneration for work in the maintenance department of the prison facility in Mountain City, Tennessee. (Id. ¶ 11.) Furthermore, while Bennett claimed he was employed as a lead welder by T.D.O.C. from November 2003 until February 2006, the Defendant asserts he later stated that he worked there as a welder for approximately two years. (Id. ¶¶ 12-13.)[1] As part of the employment application, the Plaintiff signed a certification guaranteeing that the information on the application was correct and acknowledging that submitting any false information would constitute grounds for dismissal. (Id. ¶ 14.)

ERMCO hired Bennett on April 4, 2006. (Id. ¶ 15.) In the summer of that same year, the Plaintiff injured himself on the job while lifting metal doors, and as a result, missed several weeks of work. (Id. ¶¶ 16, 19.) He reported the accident to his supervisor, Johnny Baker, and the Defendant paid for the medical treatment arising from the injury. (Id. ¶¶ 17, 18.) When Bennett's physician released him to return to work, he restricted the employee to "no bending, no crouching, no standing for long periods of time, no raising [objects] above [the Plaintiff's] head and no lifting over five pounds." (Id. ¶ 20.)

Because of the work limitations, ERMCO assigned Bennett to a position through the

---

[1] The Defendant contends that this period of time amounts to three years, two months, and twelve days. (Id. ¶ 12.) However, according to the Court's calculation, the dates only span a period of approximately two years and three months. Thus, the Defendant's argument about this apparent inconsistency is without merit.

company's workers' compensation "light duty" program, which required him to pick up discarded cigarette butts. (Id. ¶¶ 21-23.) The Plaintiff was allowed to sit as often as needed and was able to come to work earlier in the summertime. (Id. ¶¶ 24-25.) Bennett disliked his new position because he claimed it was "humiliating," and complained that co-workers threw cigarettes at his feet while he was working. (D.E. No. 12, Pl.'s Statement of Facts ¶¶ 26, 27.)

After Bennett's injury, according to the Defendant, the company was informed by two of its employees that he had recently been released from prison. (D.E. No. 10 Ex. A, Def.'s Statement of Facts ¶ 28.) The Defendant claims it subsequently confirmed with the T.D.O.C. in Mountain City, Tennessee, that the Plaintiff had been paroled from there in March 2006. (Id. ¶ 29.) On September 3, 2006, ERMCO terminated Bennett for falsifying his application by claiming to have been an employee of the Tennessee Department of Corrections, when in reality he had been an inmate. (Id. ¶¶ 30-31.) Bennett asserts, however, that ERMCO assigned him to the clean-up position and later fired him in retaliation for having filed a workers' compensation claim. (D.E. No. 12, Pl.'s Statement of Facts ¶ 27.) According to the Plaintiff's Complaint, ERMCO's "nondiscriminatory reason [for terminating him was] blatantly pretextual . . ." because of the "close timing between the receipt of [workers' compensation] benefits and the discharge . . . ." (D.E. No. 1 Compl. ¶ 9.) Furthermore, Bennett maintains that his employer was well aware that he had a felony record based on his application and thus to contend otherwise in light of the facts is not credible. (Id.)

## STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

In its motion, the Defendant argues that 1) the Plaintiff has failed to establish a prima facie case of unlawful retaliatory discharge; and 2) the undisputed facts reveal that he was terminated for a legitimate, non-retaliatory reason. The Court will address each of these arguments in turn.

1. Prima Facie Case

Because the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), it applies the law of the state in which it sits. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Tennessee courts follows the McDonnell Douglas burden-shifting framework when deciding retaliatory discharge claims. Smith v. Bridgestone/Firestone, Inc., 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Thus, the burden first rests upon the Plaintiff to establish a prima facie case of retaliation for filing a workers' compensation claim, by showing that

> (1) [he] was an employee of the defendant at the time of the injury; (2) [he] made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated [his] employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate [his] employment.

Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993). To prove causation, the Plaintiff must present "direct evidence of the necessary causal link or . . . compelling circumstantial evidence of such a link." Reed v. Alamo Rent-A-Car, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999).

In considering the type of circumstantial proof that might establish causation, the Tennessee Court of Appeals has held that plaintiffs can present evidence of

> the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's

5

> performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

Newcomb v. Kohler Co., 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) (citations omitted). However, the Tennessee Supreme Court has held that mere close proximity in time between the filing of a workers' compensation claim and the discharge, without more, is not sufficient to establish a causal relationship. Conatser v. Clarksville Coca-Cola Bottling Co., 920 S.W.2d 646, 648 (Tenn. 1995).

In this case, the Defendant alleges that the Plaintiff has produced no facts which support a connection between his termination and the filing of a workers' compensation claim. (D.E. No. 10, Def.'s Mot. for Summ. J., at 8.) Specifically, ERMCO contends that the Complaint merely alleges temporal proximity as evidence of a retaliatory motive. (Id.) The Plaintiff responds that temporal proximity may give rise to a finding of prima facie causation and points out that he was fired less than two months after he filed his claim.[2] (D.E. No. 11, Pl.'s Resp., at 10.) In support, Bennett cites a recent decision from the Tennessee Supreme Court involving sexual harassment discrimination and retaliation claims brought pursuant to the Tennessee Human Rights Act ("THRA"), the state version of a Title VII claim under federal law. (Id. (citing Allen v McPhee, 240 S.W.3d 803, 823 (Tenn. 2007).) In Allen, the Supreme Court adopted "the majority rule and [held] that close temporal proximity of a complaint and a materially adverse action are sufficient to establish a prima facie case of causation." 240 S.W.3d at 823. The opinion does not state whether the court intended its holding to apply to all common law retaliation cases or only to claims brought under the THRA.

---

[2] Bennett claims that he filed his workers' compensation claim on July 13, 2006, but provides no evidence thereof. It is undisputed that he was terminated on September 3, 2006. (D.E. No. 12, Pl.'s Statement of Facts ¶ 30.) The Defendant admits that his termination occurred "several weeks" after he was injured. (D.E. No. 10, Def.'s Mot. for Summ. J., at 11.) Thus, the Court can safely assume that the Plaintiff's firing occurred less than two months after he filed his claim.

6

In support of its holding, the court cites only to federal cases addressing Title VII discrimination claims. Id. The lone federal or state case since Allen addressing this issue applied the pre-existing rule that temporal proximity alone cannot establish causation. See Nickles v. Law Offices of Donald D. Zuccarello, No. 3:06cv0702, 2008 WL 53689, at *6 (M.D. Tenn. Jan. 2, 2008) ("Moreover, an employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a *prima facie* case of retaliation.").

Because the Plaintiff has presented other evidence to establish that his filing of a workers' compensation claim was a substantial factor in his termination, however, the Court need not resolve this issue. See Craig v. Porter Cable/Delta, No. 1:05-1018-T-An, 2006 WL 1006857, at *8 (W.D. Tenn. Apr. 17, 2006) (Todd, J.) ("[T]emporal proximity plus *other circumstantial evidence* of causation requires the employer to come forward with a legitimate, non-retaliatory basis for the discharge.") (citation omitted). As discussed below, Bennett has provided sufficient proof to challenge his employer's non-discriminatory reason for firing him. See Newcomb, 222 S.W.3d at 391 (holding that causation can be established with evidence tending to show that the stated reason for discharge was false). This evidence, when combined with the fact that the Plaintiff was terminated less than two months after filing a claim for workers' compensation benefits, establishes a prima facie case of retaliation.

2. Legitimate, Non-Retaliatory Reason

Because Bennett has presented a prima facie case of retaliation, the burden shifts to the employer to prove a legitimate, non-pretextual reason for discharging the employee. Id. at 389. The Defendant argues that it terminated the Plaintiff's employment because 1) he lied about how long

he had worked as a welder at "T.D.O.C."; and 2) he intentionally misrepresented the nature of his relationship with the Tennessee Department of Corrections on his employment application. (D.E. No. 10, Def.'s Mot. for Summ. J., at 9-11.) Bennett may challenge ERMCO's stated reason for his termination "by showing the employer's reasons 'have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or if they were factors, by showing that they were jointly insufficient to motivate the discharge.'" Frizzell v. Mohawk Indus., No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006) (quoting Moore v. Nashville Elec. Power Bd., 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001)).

On his application for employment, Bennett stated that he worked for the "T.D.O.C" as a "Led [sic] Welder" from November 3, 2003, until February 15, 2006. (D.E. No. 10, Ex. 1 to Dep. of Pl., at 2.) The Defendant calculates that this time period amounts to "three years, two months, and twelve days," and argues that the Plaintiff lied on his application, because he later admitted in his deposition that he actually only worked as a lead welder for approximately two years. (D.E. No. 10, Def.'s Mot. for Summ. J., at 9.) By the Court's calculation, however, only two years, three months, and 12 days passed between November 3, 2003 and February 15, 2006. Thus, the Plaintiff's deposition testimony does not contradict what he wrote on his application. Furthermore, the Defendant has presented no evidence that any of the employees involved in the decision to fire Bennett considered this alleged discrepancy to be a factor in their decision. Thus, because this reason has no basis in fact and was not a factor motivating the discharge, it does not constitute a legitimate, non-pretextual reason for terminating Bennett.

Next, the Defendant argues that the Plaintiff intentionally misrepresented the nature of his relationship with the Tennessee Department of Corrections on his employment application. (D.E.

No. 10, Def.'s Mot. for Summ. J., at 10-11.) ERMCO argues that a reasonable person reading Bennett's employment application would not assume that he had been a prisoner at the "T.D.O.C.," but that he had been a civilian employee. For example, the employer points out that the Plaintiff stated that he was earning "$18.75," without indicating that this was a weekly, not an hourly, wage. (Id. at 10.) Furthermore, the Plaintiff used the abbreviation "T.D.O.C." for Tennessee Department of Corrections, later claiming that he did not know how to spell the word "Tennessee." (Id.) Last, he contended that his reason for leaving his prior place of employment was not that he was paroled, but that it was too far from home. (Id. at 10-11.)[3] The Plaintiff argues in response that the Defendant's reason for terminating him must be pretextual, because Bennett was in fact employed by the Tennessee Department of Corrections while he was incarcerated and did not lie about that fact on his application. (D.E. No. 11, Pl.'s Resp., at 11-14 (contending that 1) testimony shows the Plaintiff performed work while serving his sentence, 2) the Plaintiff listed "T.D.O.C." on his application as his last place of employment and included the name of his supervisor as a reference, 3) the Defendant spoke with that supervisor who confirmed that he was a "good worker," and 4) at his termination meeting, the Plaintiff offered to submit tax records to confirm he worked at the prison).)

The Court agrees with the Defendant that an employer might reasonably distinguish between prospective employees who received work experience and training while serving a jail term and those who were employed by a prison. Thus, it is credible that ERMCO may have fired the Plaintiff, not in retaliation for filing a workers' compensation claim, but after it discovered that he had

---

[3] The Defendant calls this statement by Bennett "disingenuous" and "laughable," but the Plaintiff testified at his deposition that he had discussed with his supervisor the possibility of staying on at the prison as a civilian employee. (D.E. No. 11 Ex. C, Dep. of Pl., at 27.)

9

seemingly filled out his employment application in a way that mislead the company about his prior work experience. However, Bennett has provided sufficient evidence that, when viewed in the light most favorable to the Plaintiff, indicates that the Defendant knew that he had been an inmate at the prison, rather than a civilian employee, when it hired him. First, the Plaintiff listed "T.D.O.C" on his application and the evidence reveals that Fran Spence, the ERMCO employee who took his application, knew what the acronym stood for because she had seen it on other applications. (D.E. No. 11 Ex. B., Dep. of Spence, at 27.) Second, the Plaintiff admitted in his application that he had been convicted of a felony.[4] (D.E. No. 11, Ex. 1 to Dep. of Pl., at 1.) Third, Bennett gave the company his prison ID card as a form of identification, explaining that "all I had was an inmate prison card . . . and it would be a couple of weeks before I had the money to get my driver's license." (D.E. No. 11 Ex. C, Dep. of Pl., at 45.) Last, one of the Defendant's employees spoke with the Plaintiff's supervisor at the prison. (D.E. No. 11 Ex. B, Dep. of Frances Marian Spence, at 27.) A jury could find that this evidence, viewed together, supports the inference that the Defendant knew when it hired him that Bennett had received his work experience at the Tennessee Department of Corrections as an inmate. If so, its purported reason for discharging the Plaintiff would clearly be pretextual and disingenuous. Smith, 2 S.W.3d at 204 (finding that at the summary judgment stage, a plaintiff must present proof that is sufficient to permit, rather than mandate, the trier of fact to find pretext). Thus, the Court finds that the Plaintiff has raised a material issue of fact

---

[4] ERMCO's employment application specifically states that having a criminal record is not an automatic bar to employment and that the company will consider the nature and seriousness of the crime, as well as the rehabilitation efforts of the applicant. (D.E. No. 10, Ex. 1 to Dep. of Pl., at 1.)

as to whether he was fired in retaliation for filing a workers' compensation claim.[5]

## CONCLUSION

For the reasons articulated herein, the Court DENIES the Defendant's motion for summary judgment.

IT IS SO ORDERED this 28th day of March, 2008.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE

---

[5] The Plaintiff also argues that the Defendant's motion should be denied because ERMCO engaged in a pattern of antagonism towards him following his filing of a workers' compensation claim. (Doc. No. 11, Pl.'s Resp., at 17-19.) The Court need not address this issue, however, based on it ruling herein.